**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| AG NUBIO INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>VIVID LIFE SCIENCES, LLC, et al.,<br><br>Defendants. | Case No. 0:25-cv-03585-JWB-LIB |

**DEFENDANT TIDAL VISION PRODUCTS, INC.'S STATEMENT OF THE CASE[1]**

Defendant Tidal Vision Products, Inc. ("Tidal"), by its undersigned counsel, submits its Statement of the Case to the Court pursuant to the Court's Pretrial Scheduling Notice and Order (Doc. No. 96).

## I. Facts of the Case

This case is about whether a seed treatment product—GenMax—currently owned by Tidal, purchased from Defendants Vivid Life Sciences, LLC ("Vivid") and its executive officer Joshua Krenz ("Krenz") infringes upon the intellectual property of another product—NuPro—owned by Plaintiffs Ag NuBio Inc ("Ag Nubio") and BioAgro S.A. ("Bioagro, and, collectively with Ag Nubio, the "Plaintiffs").

The purported infringement in this case consists of Defendants Vivid and Krenz developing GenMax formula by allegedly improperly relying upon Krenz's knowledge of

[1] This Statement of the Case is based on present information known to Tidal at the outset of discovery. It is not intended to reflect any factual or legal admissions, and it is not an exhaustive summary of all facts and theories on which Tial may assert defenses to Plaintiffs' claims. Tidal reserves all rights to rely on additional or different facts and legal arguments and defenses as the case proceeds.

certain trade secrets owned by Plaintiffs and used in the development of their product NuPro. Both NuPro and GenMax use an active ingredient called chitosan, which is an animal byproduct that has been commonly used in agriculture since the late 20th century. Plaintiffs allege that in 2017 through 2019, when Vivid and Krenz were developing GenMax, they either (a) relied upon the trade secret formula of the same, or (b) improperly used the Environmental Protection Agency ("EPA") Confidential Statement of Formula ("CSF") of NuPro to file their own CSF for GenMax without consulting or compensating Plaintiffs.

The parties are in universal agreement that Tidal did not enter the picture until, at the earliest, 2021, with it officially purchasing the right to manufacture, market, and sell GenMax from Vivid in 2022. The parties are also in apparent agreement that between 2019 (when Vivid completed its registration of the GenMax CSF and began selling it) and 2022 (when Tidal purchased the rights to GenMax), the CSF for GenMax changed numerous times, including material changes to the formula and ingredients for the same. Tidal has also changed the CSF for GenMax following its purchase in 2022.

Simply, these facts do not support liability for trade secret infringement, or any of the causes of action set forth in the First Amended Complaint (the "FAC") (Doc. No. 42) asserted against Tidal. While Tidal, as will be discusseddoes not concede that GenMax was ate some point based upon NuPro, it would not be liable even if it was. As the Court is aware, this case is a re-filing of a previous action filed Ag Nubio, against Vivid, Krenz, Jerry Duff ("Duff"), AgriThority, LLC ("Agrithority"), and Tidal in the United States District for the Western District of Missouri, Case No. 4:24-cv-00489-BP (the "Missouri

Action”). In the Missouri Action, AgNubio made many of the same allegations as it makes in the instant lawsuit, including that GenMax constituted an unlawful repack of NuPro. Though discovery was still in its early stages when Plaintiff dismissed the Missouri Action and refiled the instant action, discovery did not reveal evidence showing that Tidal was aware or had reason to suspect that GenMax was an unauthorized infringement upon the NuPro formula/CSF. Furthermore, the confidential documents produced in the Missouri Action demonstrate that there are very few similarities between the GenMax formula and the NuPro formula, with one of the only such similarities being that both products use the agricultural product chitosan, which is itself not a trade secret.

## II. <u>Particularized facts which support the claimed defenses, including any applicable statutes as identified by number</u>

### A. Count I: Violation of the Defend Trade Secrets Act (“DTSA”) against all Defendants (18 U.S.C. §§ 1836 *et seq*)

1. GenMax was never an unauthorized infringement of NuPro’s intellectual property. While discovery into this matter is not yet complete, Tidal contends that, based upon the warranties and claims of Vivid in the agreement for the sale of GenMax, its formula was developed independently without improper use of the NuPro formula. At best, Plaintiffs may prove that Vivid attempted to replicate the effects of NuPro in creating GenMax, which is not an unauthorized use of a trade secret under the applicable law.
2. The current formula for GenMax is substantially different from the formula for NuPro. Even if Plaintiffs can demonstrate that GenMax was

initially based upon NuPro—a point which Tidal does not concede—by the time GenMax was purchased by Tidal it was substantially different. Furthermore, Tidal has made additional changes to GenMax which have increased its efficacy and made it even more unlike NuPro. Attorneys-eyes-only documents showing the exact formulation of both products, produced in the Missouri Action, confirm this.

3. The only similarity between the two products is the use of chitosan, which is not itself a trade secret. Chitosan is a widely-known and frequently used animal byproduct that has been used in agriculture since the late 20th Century. It is not itself a trade secret and neither is the fact that both NuPro and GenMax use it. In fact, both NuPro and GenMax advertise the fact that they utilize chitosan. Instead, the true trade secret in both NuPro and GenMax is the chemical formulation and manner in which the chitosan is derived and applied, which differs for both products. Mere use of the same active ingredient is insufficient to constitute misappropriation.

4. Even if Plaintiffs can prove that GenMax infringes upon NuPro, there is no evidence to suggest that Tidal was aware or had reason to know that GenMax was based upon NuPro. This is further proven by the representations of Vivid and Krenz when the product was purchased in 2022, as well as the fact that, by then, the products were substantially different in composition.

**B. Count II: Violation of the Minnesota Uniform Trade Secrets Act ("MUTSA") against all Defendants (Sections 325C.01 to 325C.08).**

1. Tidal states that all of its defenses and factual arguments articulated above, under section II.A, are applicable here. The products were and currently are substantially different from each other and only resemble one another in that they contain chitosan. Moreover, though Tidal does not concede that GenMax infringed upon NuPro at any point, Tidal had no reason to suspect that GenMax was unauthorized at the time that it purchased it.

2. Plaintiffs have not suffered any actual losses due to Tidal's conduct, as the products are substantially different from one another. GenMax, as it was constituted in 2022 and as it is currently constituted, is not a substitute for NuPro; it is an entirely different product with unique chitosan characteristics and greater chemical efficacy. As a result, Plaintiffs would not be naturally entitled to GenMax's market share, which owes itself to GenMax's chemical features and effectiveness, not confusion or misappropriation.

**C. Count III: Breach of Contract and Declaratory Judgment thereon against Vivid, GM LLC, and Tidal (28 U.S.C. §§ 2201–2202).**

1. The Court has already ruled that the breach of contract claim does not apply to Tidal because Tidal never signed the NDA. However, the fact that Tidal never signed the NDA means that Plaintiffs are not entitled to either of the other forms of relief under this count because the injunctive

and declaratory relief sought stems from rights described by the NDA between Vivid and Plaintiffs.

2. The injunctive relief sought is too broad, such that it violates public policy, and harms the public interest. Plaintiffs seek an injunction enforcing the NDA against Tidal as well as declaring that almost any product related in any way to the NuPro formula is owned by Plaintiffs. Again, given the ubiquity of chitosan and similar agreements in seed treatments, this would automatically transfer ownership of numerous extant farm products, including GenMax, to Plaintiffs.

3. As discussed, Plaintiffs do not have a legitimate claim to ownership of the GenMax formula. It is and has been substantially different, and the mere use of chitosan does not make it an infringement.

### D. Count IV: Violations of the Lanham Act against all Defendants (1 5 U.S.C. §§ 1051 *et seq.*).

1. Tidal states that all of its defenses and factual arguments articulated above, under section II.A, are applicable here. The products were and currently are substantially different from each other and only resemble one another in that they contain chitosan. Moreover, though Tidal does not concede that GenMax infringed upon NuPro at any point, Tidal had no reason to suspect that GenMax was unauthorized at the time that it purchased it.

2. There is no likelihood of confusion under the Lanham Act as the products are sufficiently different. Regardless of how the GenMax product was derived, it contains a separate formula, different chitosan characteristics, and is marketed separately from NuPro.

3. Additionally, the allegations in this claim that GenMax was marketed as "the new NuPro" relate to representations allegedly made by Vivid and Krenz at least two years before Tidal purchased the product. There are no allegations that Tidal has in any way misrepresented GenMax as related to NuPro.

4. The purported misrepresentation is not material or likely to influence consumer purchasing decisions as the products are different. GenMax's product is a highly-refined and more effective formula that owes its market share not to confusion (Tidal has never made any representations about NuPro), but due to its reliability in agricultural processes due to its formulation.

**E. Count IV: Violations of the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA") against all Defendants (Sections 325D.43 through 325D.48).**

1. Tidal states that all of its defenses and factual arguments articulated above, under section II.A, are applicable here. The products were and currently are substantially different from each other and only resemble one another in that they contain chitosan. Moreover, though Tidal does not concede that GenMax infringed upon NuPro at any point, Tidal had

no reason to suspect that GenMax was unauthorized at the time that it purchased it.

2. As described in section II.D, there is no likelihood for confusion as the products are sufficiently different and are not marketed like each other.

3. As described in section II.D., allegations that GenMax was marketed as "the new NuPro," or was compared to NuPro in marketing relate solely to the purported conduct of Vivid and Krenz two years before the sale of the formula, not Tidal. Tidal has made no such representations regarding NuPro.

## III. **Claimed Damages**

Tidal does not yet seek damages in this lawsuit but reserves the right to assert such claims as discovery is ongoing.

Respectfully submitted

Dated: May 21, 2026

*/s/ Randi J. Winter*
SPENCER FANE LLP
Randi J. Winter, MN #0391354
100 S 5th Street, Suite 2500
Minneapolis, MN 55402
Telephone: (612) 268-7000
rwinter@spencerfane.com

Douglas M. Weems, MO #41165
(Admitted *Pro Hac Vice*)
Kyle A Klucas, MO #71973
(Admitted *Pro Hac Vice*)
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Telephone: (816) 474-8100
Fax: (816) 474-3216
dweems@spencerfane.com
kklucas@spencerfane.com

*Attorneys for Defendant Tidal Vision Products, Inc.*